Anna Brown v. Commissioner.
Brown v. Commissioner
Docket No. 50681.
United States Tax Court
T.C. Memo 1956-19; 1956 Tax Ct. Memo LEXIS 277; 15 T.C.M. (CCH) 99; T.C.M. (RIA) 56019; January 24, 1956
Lee S. Jones, Esq., Kentucky Home Life Building, Louisville, Ky., for the petitioner. Elmer E. Lyon, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioner's income tax and penalties for the years and in the amounts as follows: 50%
25%
Year
Deficiency
Penalty
Penalty
1941
$ 141.96
$ 70.98
$ 35.49
1942
317.90
158.95
79.48
1943
$ 587.96
$268.98
$134.49
1944
457.24
228.62
114.31
1945
597.50
298.75
149.38
1946
701.86
350.94
175.48
1947
1,016.60
508.30
254.15
1948
751.92
375.96
187.98
1949
934.04
467.02
233.51
1950
1,716.55
858.28
429.14
1951
1,370.08
685.05
342.53
1952
1,264.86
632.43
126.48
*278 The issues are (1) whether the respondent correctly determined the increase in net worth and living expenses of petitioner for each of the taxable years 1941 to 1952, inclusive; (2) whether petitioner is liable for the 50 per cent addition to the tax for fraud in each of the taxable years involved; (3) whether the petitioner is liable for the delinquency penalties under section 291(a) of the Internal Revenue Code of 1939 for each of the taxable years involved; and (4) whether the assessment and collection of the deficiencies determined for the taxable years 1941 to 1949, inclusive, is barred by the statute of limitations. Findings of Fact Petitioner is a resident of Louisville, Kentucky. She filed no income tax returns for the taxable years 1941 to 1952, inclusive. In 1923 petitioner, whose maiden name was Anna Shelton, was married to Charles Brown. The marriage ended in divorce in 1924. For several years thereafter petitioner went with a man by the name of Haines but never married him. Haines died and petitioner has sometimes thereafter gone by the name of Anna Haines. Petitioner is approximately 62 years of age and has, since the 1920's, purchased and sold various real *279 estate in the vicinity of Louisville, Kentucky, where she resided throughout the taxable years involved. During the taxable years in question she owned an appartment house at 768 Eastern Parkway. The building, which she built, contained four apartments which were rented, and an apartment for herself in the basement consisting of three bedrooms, a kitchen, and a dining room. On the same property there was a garage apartment which she also rented. Prior to the taxable year 1941, petitioner furnished each of her five apartments with stoves, refrigerators, and linoleum at an aggregate cost of $1,800. During the taxable years 1946 to 1952, inclusive, petitioner made further improvements to her building which she rented as follows: Year
Amount
1946
$5,712.50
1948
5,655.00
1950
4,325.00
1952
1,670.42
During the taxable years involved petitioner was employed only during the years 1944 and 1945. In other years she lived off of rental income and gifts to her from her ex-husband and friends. From June 5, 1944, to August 24, 1945, petitioner was employed by E. I. du Pont de Nemours & Company at Charlestown, Indiana, under her maiden name of Anna Shelton. During 1944 *280 and 1945 petitioner earned as wages the amounts of $1,383.35 and $1,563.85, respectively, and had Federal income tax with-held thereon in the respective amounts of $207 and $206.40. During the taxable years involved petitioner kept no books or records from which her correct income could be determined. The respondent determined petitioner's net income for each of the taxable years 1941 to 1952, inclusive, by use of the net worth plus personal living expenses method. The net worth statement used by respondent in his determination is as follows: 1940
1941
1942
Assets: Royal Bank (Ckg. Acct.)
Liberty Bank (Rental Coll. Acct.)
Lot Miller Ave.
$1,000.00
$1,000.00
$1,000.00
Eastern Pkwy. (Wigginton Estate)
1,000.00
1,000.00
1,000.00
26th Street (Bet. Portland & Mont-
gomery)
500.00
500.00
500.00
Preston & Brandeis
500.00
500.00
Apt. Bldg. 768 Miller Ave.
15,000.00
15,000.00
15,000.00
Improvements -
(From Bank Ins. at Royal)
(From Bank Ins. at Royal)
(From Bank Ins. at Royal)
(From Bank Ins. at Royal)
Cabinets & Laundramat-Koenig Bros.
Boiler
Cabinets & gas range
Electric mower
Sales Furniture
Sales Furniture
Sales Furniture
Sales Furniture
18,000.00
18,000.00
17,500.00
Liabilities: Liberty Bank - Mortgage
$3,847.16
$3,187.72
$2,556.01
Royal Bank
Koenig Bros.
Wimburg Hardware
Personal Finance
Sales Furniture
3,847.16
3,187.72
2,556.01
Net Worth
14,152.84
14,812.28
14,943.99
Increase in Net Worth
659.44
131.71
Living Expense
1,600.56
2,112.29
Net Income
$2,260.00
$2,244.00
*281 1943
1944
1945
Assets: Royal Bank (Ckg. Acct.)
Liberty Bank (Rental Coll. Acct.)
$ 11.26
$ 73.44
Lot Miller Ave.
1,000.00
1,000.00
$1,000.00
Eastern Pkwy. (Wigginton Estate)
1,000.00
500.00
26th Street (Bet. Portland & Mont-
gomery)
500.00
500.00
500.00
Preston & Brandeis
Apt. Bldg. 768 Miller Ave.
15,000.00
15,000.00
15,000.00
Improvements -
(From Bank Ins. at Royal)
(From Bank Ins. at Royal)
(From Bank Ins. at Royal)
(From Bank Ins. at Royal)
Cabinets & Laundramat-Koenig Bros.
Boiler
Cabinets & gas range
Electric mower
Sales Furniture
Sales Furniture
Sales Furniture
Sales Furniture
17,511.26
17,073.44
16,500.00
Liabilities: Liberty Bank - Mortgage
$1,547.36
$ 610.05
Royal Bank
Koenig Bros.
Wimburg Hardware
Personal Finance
Sales Furniture
1,547.36
610.05
Net Worth
15,963.90
16,463.39
$16,500.00
Increase in Net Worth
1,019.91
499.49
36.61
Living Expense
1,888.09
1,988.51
3,013.39
Net Income
$2,908.00
$2,488.00
$3,050.00
1946
1947
1948
1949
Assets: Royal Bank (Ckg. Acct.)
$ 24.07
$ 33.39
$ 2.92
$ 280.85
Liberty Bank (Rental Coll.
Acct.)
Lot Miller Ave.
1,000.00
1,000.00
1,000.00
1,000.00
Eastern Pkwy. (Wigginton
Estate)
26th Street (Bet. Portland
& Montgomery)
Preston & Brandeis
Apt. Bldg. 768 Miller Ave.
15,000.00
15,000.00
15,000.00
15,000.00
Improvements (From Bank
Ins. at Royal)
7,000.00
7,000.00
7,000.00
7,000.00
Improvements (From Bank
Ins. at Royal)
5,655.00
5,655.00
Improvements (From Bank
Ins. at Royal)
Improvements (From Bank
Ins. at Royal)
Cabinets & Laundramat-
Koenig Bros.
1,197.95
Boiler
841.00
Cabinets & gas range
Electric mower
Sales Furniture
151.00
151.00
151.00
151.00
Sales Furniture
109.95
109.95
109.95
Sales Furniture
80.90
80.90
Sales Furniture
23,175.07
23,294.34
28,999.97
30,316.65
Liabilities: Liberty Bank - Mortgage
Royal Bank
5,635.00
3,295.00
6,805.00
5,518.98
Koenig Bros.
841.00
Wimburg Hardware
Personal Finance
300.00
274.43
Sales Furniture
74.30
74.30
74.30
5,635.00
3,369.30
7,179.30
6,708.71
Net Worth
17,540.07
19,925.04
21,820.47
23,607.94
Increase in Net Worth
1,040.07
2,384.97
1,895.43
1,787.47
Living Expense
2,999.93
3,000.03
2,847.57
3,751.53
Net Income
$4,040.00
$5,385.00
$4,743.00
$5,539.00
*282 1950
1951
1952
Assets: Royal Bank (Ckg. Acct.)
$ 1.10
$ 49.28
Liberty Bank (Rental Coll.
Acct.)
Lot Miller Ave.
1,000.00
1,000.00
$1,000.00
Eastern Pkwy. (Wigginton
Estate)
26th Street (Bet. Portland
& Montgomery)
Preston & Brandeis
Apt. Bldg. 768 Miller Ave.
15,000.00
15,000.00
15,000.00
Improvements (From Bank
Ins. at Royal)
7,000.00
7,000.00
7,000.00
Improvements (From Bank
Ins. at Royal)
5,655.00
5,655.00
5,655.00
Improvements (From Bank
Ins. at Royal)
4,325.00
4,325.00
4,325.00
Improvements (From Bank
Ins. at Royal)
4,342.00
Cabinets & Laundramat-
Koenig Bros.
1,197.95
1,197.95
1,197.95
Boiler
841.00
841.00
841.00
Cabinets & gas range
599.65
599.65
Electric mower
74.50
74.50
74.50
Sales Furniture
151.00
151.00
151.00
Sales Furniture
109.95
109.95
109.95
Sales Furniture
80.90
80.90
80.90
Sales Furniture
21.95
21.95
35,436.40
36,106.18
40,398.90
Liabilities: Liberty Bank - Mortgage
Royal Bank
6,650.00
4,398.50
6,840.00
Koenig Bros.
157.35
99.65
Wimburg Hardware
Personal Finance
153.42
300.00
117.21
Sales Furniture
54.30
7,015.07
4,798.15
6,957.21
Net Worth
28,421.33
31,308.03
33,441.69
Increase in Net Worth
4,813.29
2,886.70
2,133.66
Living Expense
3,599.61
3,617.30
3,600.34
Net Income
$8,413.00
$6,504.00
$5,734.00
*283 During the year 1938 petitioner purchased a lot on Miller Avenue for the sum of $1,000, which she sold in 1944. During 1938 petitioner also purchased a lot at Preston and Brandeis Streets in Louisville for the sum of $3,500. This property was disposed of during 1942 when petitioner sold the property on a deferred payment basis. In addition to the $400 down payment received in 1942 petitioner received payments in the respective years as follows: Year
Amount
1942
$244
1943
420
1944
235
1945
390
1946
455
1947
465
1948
450
1949
555
During the year 1937 petitioner purchased a lot at the corner of Bradley and Eastern Parkway for the sum of $1,200. Title to the property was placed in the name of petitioner's niece, Marjorie Trunk, who sold the property in 1947, petitioner quitclaiming any interest that she had therein. For each of the taxable years 1941 to 1944, inclusive, petitioner's living expenses were $1,600 per annum. For each of the taxable years 1945 to 1952, inclusive, petitioner's living expenses were $2,000 annually. During each of the taxable years 1948 to 1952, inclusive, petitioner borrowed from one Fred Hawkins the sum of $440. These *284 amounts were never repaid during the taxable years involved and at the end of 1952 petitioner owed Hawkins the aggregate amount of $2,200. For each of the taxable years 1941 to 1952 petitioner is entitled to depreciation at the rate of two and one-half per cent on her apartment building and to depreciation of eight per cent on the furnishings and equipment included therein. The respondent's notice of deficiency was mailed on June 19, 1953. It was appropriate for respondent to compute petitioner's net income by use of the net worth plus personal living expenses method. The respondent has failed to establish that any part of the deficiency for each of the taxable years 1941 to 1952, inclusive, was due to fraud with intent to evade tax. Petitioner's failure to file income tax returns for 1941 to 1952, inclusive, was not due to reasonable cause but to willful neglect. Opinion LEMIRE, Judge: The petitioner challenges the respondent's use of the net worth plus personal living expenses method in computing her income and the inclusion and omission of certain items on the net worth statement. The record establishes that petitioner kept no books or records from which her correct *285 net income could be determined clearly. Accordingly, it was appropriate for respondent to compute petitioner's net income by use of the net worth plus personal living expenses method. Section 41, Internal Revenue Code of 1939; Arlette Coat Co., Inc., 14 T.C. 751. The first item in dispute concerns the cost basis allocated by respondent to the property described as "Eastern Pkwy. (Wigginton Estate)". After a review of all the facts of record we are satisfied that petitioner paid the sum of $1,500 for the property prior to 1941. She expended the further sum of $500 for the construction of a cottage and $200 for grading in the taxable year 1941. The petitioner disposed of the property in 1942. The amount of $1,500 should be reflected for the year 1940 and the additional amount of $700, or a total of $2,200, for the year 1941. The next item which petitioner challenges is a piece of real property described as "Preston and Brandeis" which respondent shows on hand at a value of $500 as of December 31, 1940, and disposed of during the taxable year 1942. Petitioner testified that she paid $3,500 for the property in 1922 or 1923 and that she sold it in 1942. The record shows *286 that petitioner purchased the property in 1938 for $3,500 and that she disposed of it in 1942 on a deferred payment plan. She received a down payment in 1942 of $400 and installment payments in each of the years 1942 to 1949, inclusive. These installment payments should be reflected as assets on the net worth statement for each of the taxable years 1942 to 1949, inclusive. For the taxable years 1946, 1948, 1950, and 1952, petitioner contests the amount of real estate improvements reflected on the net worth statement. These improvements were financed by bank loans. The record shows that the additional improvements which the petitioner made to her apartment house property were in the amounts of $5,712.50 in 1946, $5,655 in 1948, $4,325 in 1950, and $1,670.42 in 1952. The amounts shown on the net worth statement for improvements in such years are to be adjusted accordingly. The petitioner also contests the failure to include certain assets on hand at the beginning of the net worth period. The first item relates to a lot on Miller Avenue, which is in addition to the Miller Avenue lot designated on the net worth statement. The record shows that the petitioner purchased an additional *287 lot on Miller Avenue in 1938 at a cost of $1,000, which she sold in 1944. This additional asset of $1,000 is to be reflected on the net worth statement for the years 1940 to 1943, inclusive. The second omitted item is a piece of real property located at the corner of Bradley and Eastern Parkway which petitioner contends she purchased during 1937 for $1,200 and which she sold in 1949 for $1,900. The petitioner testified that she purchased such property in 1937 at a cost of $1,200 and that the title was taken in the name of her niece, Marjorie Trunk. Deeds showing that this property was conveyed to Marjorie Trunk on October 19, 1937, and by her reconveyed to Lilly May Snyder on November 12, 1947, were offered in evidence to substantiate petitioner's claim. The deed of November 12, 1947, shows that petitioner merely quitclaimed any right, title or interest she may have had in the property. The purchase of the property by the petitioner in the name of her niece at a cost of $1,200 is supported by the testimony of Jesse S. Taylor, a real estate agent who handled the transaction. On the basis of this testimony we have found as a fact that the petitioner purchased the property in 1937 at *288 a cost of $1,200. The Bradley and Eastern Parkway property is to be shown as an asset on hand in 1940 in the amount of $1,200. Petitioner next contends that the net worth statement fails to take into account certain assets consisting of stoves, refrigerators, and linoleum which petitioner had on hand at the beginning of the taxable years involved to furnish each of her five apartments. We have found as a fact that for such items petitioner expended the aggregate amount of $1,800. Such amount is to be reflected in the net worth statement as assets on hand at the beginning of the period. Petitioner contends that she expended certain amounts for household furnishings such as draperies, tables, etc., both prior to 1940 and in 1949. The evidence as to such expenditures is not sufficient for us to make any findings of fact with respect thereto. Petitioner further challenges the omission of petitioner's liability to one Fred Hawkins in the total amount of $2,200 for monies borrowed throughout the taxable years 1948 to 1952, inclusive. From the testimony of both petitioner and Hawkins we are satisfied that a valid debtor-creditor relationship existed and that Hawkins loaned petitioner *289 approximately the sum of $440 per year for each of the taxable years 1948 to 1952, inclusive. These loans were not repaid during the taxable years involved. The liabilities are not reflected on the net worth statement. An additional liability of $440 is to be reflected for each of the years 1948 to 1952, inclusive. Finally, petitioner contests the omission of any allowance for depreciation for any of the taxable years involved. On brief respondent concedes that petitioner is entitled to reasonable depreciation on her rental property. We have found as a fact that for each of the taxable years involved petitioner is entitled to depreciation at the rate of two and one-half per cent per annum on the apartment building and to depreciation at the rate of eight per cent per annum on the household equipment. The next item in dispute is the amount of petitioner's living expenses for each of the taxable years. In his net worth computation respondent determined amounts varying from a low of $1,600.56 for 1941 to a high of $3,751.53 for 1949, averaging $2,834.93 per year. We are satisfied from the record, including petitioner's testimony as to her mode of living, that petitioner's living expenses *290 were $1,600 for each of the taxable years 1941 to 1944, inclusive, and $2,000 for each of the taxable years 1945 to 1952, inclusive. We have so found as a fact. The second issue presented is whether all or any part of the deficiency for each of the taxable years 1941 to 1952, inclusive, is due to fraud with intent to evade tax. After a careful consideration of the entire record, we are convinced that the respondent has failed to establish that any part of the deficiency for each of the taxable years in question is due to fraud with intent to evade tax. The 50 per cent addition to the tax for fraud under section 293(b) of the Code as to each of the taxable years 1941 to 1952, inclusive, is, therefore, disallowed.
The third question presented relates to the propriety of the imposition of a delinquency penalty under section 291(a) for failure to file timely returns for each of the taxable years involved. In her pleadings the petitioner has admitted that no returns were filed for any taxable year. The petitioner has not shown that her failure to file returns was due to reasonable cause and not to willful neglect. In the event any deficiency results under a recomputation required hereunder *291 the delinquency penalty for each of the taxable years is approved. Finally, the petitioner contends that the deficiency for each of the taxable years 1941 to 1949, inclusive, is barred by section 275(a) of the 1939 Code. Since we have found as a fact that the petitioner filed no returns for such years the three-year period of limitations is not applicable and the deficiencies, if any, are not barred. Decision will be entered under Rule 50.